IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Angela Cruz, | ) | Civil Action No.: 3:17-cv-02847-JMC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| Charter Communications Short Term | ) | |
| Disability Plan, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Angela Cruz filed this action against Defendant Charter Communications Short

Term Disability Plan seeking a declaration by the court that she is entitled to short term disability

benefits ("STD Benefits") and attorney's fees under a self-funded benefit plan promulgated

pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§

1001–1461.[1]  (ECF No. 1 at 3.)

This matter is before the court to address the parties' respective requests for Judgment.

(ECF Nos. 24, 25.)  In this regard, the parties agree that "[t]he substantive issue that must be

resolved by the [c]ourt is whether the claims administrator abused its discretion in denying

Plaintiff's disability benefits claim under the Plan."  (ECF No. 26 at 4 ¶ 8.)  Therefore, after

considering the parties' Joint Stipulation (ECF No. 26), the Administrative Record (ECF Nos. 27–

27-7[2]), and their respective Memorandums in Support of Judgment (ECF Nos. 24, 25), the court

**AFFIRMS** the denial of Plaintiff's STD Benefits claim, **DECLINES** to award Plaintiff attorney's

fees, and **ENTERS** Judgment for Defendant.

---

[1] Plaintiff seeks STD Benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) and attorney's fees pursuant
to 29 U.S.C. § 1132(g)."  (ECF No. 26 at 1 ¶ 1.)
[2] Citations to the Administrative Record relied upon by the parties are to the CM/ECF page
numbers.

## I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

"Charter Communications, Inc. [("CCI")] (NASDAQ:CHTR) is a leading broadband connectivity company and cable operator serving more than 30 million customers in 41 states through its Spectrum brand." *Charter Communications*, https://corporate.charter.com/about-charter (last visited Oct. 27, 2020). CCI has an employee benefit program called the Charter Communications, Inc. Welfare Benefits Plan (the "Benefits Plan"). (*See* ECF No. 27-4 at 5–34.) Defendant is a component program of the Benefits Plan. (*Id.* at 30, 38.) The Claims Administrator for Defendant is Sedgwick Claims Management Services, Inc. ("Sedgwick"). (*Id.* at 39.)

CCI hired Plaintiff on September 18, 2015, and she worked as a Direct Sales Representative. (ECF Nos. 27-3 at 86, 27-1 at 93.) The following is an accurate description of the Direct Sales Representative position:

> Summary: The Direct Sales Representative is responsible for conducting door-to-door sales of all Time Warner Cable products and services.
>
> Essential Duties and Responsibilities include the following. Other duties may be assigned: Conducts door-to-door sales or follows leads from management and other workers. Travels throughout assigned territory to call on regular and prospective customers to solicit orders. Compiles a list of prospective customers from lists of homes that do not have cable television and lists of residential addresses with names of owners and occupants. Obtains pertinent information concerning clients and their current account for use in sales. Quotes prices and credit terms and prepares sales contracts for orders obtained; Presents rates with client. Compiles daily reports of sales contacts, presentations, objections, sales and other information as required by supervisor. Estimates date of delivery to customer, based on knowledge of own company's production and delivery schedules. Enters new customer data and other sales data for current customers into computer database. Develops and maintains relationships with customers; Investigates and resolves customer problems with deliveries. Reviews orders for ideas to expand services available to present customers. Collects payments on accounts; Daily turn-in of orders and monies collected in the field. Displays sample products, explains desirable qualities of products, and distributes advertising literature explaining service and products. Contacts individuals previously solicited in person, by telephone, or by mail to close sale. Makes outbound lead follow-up calls to potential and existing customers by telephone and e-mail to qualify leads and sell[s] products and services. Provides product demos to qualified customers on request;

2

> Explains and demonstrates equipment usage.  Works with outside sales representatives to keep account activities and literature up to date.  Analyzes customer's communication needs and recommends equipment needed; Recommends services such as cable, internet and/or additional telephone services. Overcomes objections of prospective customers.  Apprise[s] Supervisor of competitive activity in territory.

(ECF No. 27-2 at 20.)  As an employee of CCI, Plaintiff was a beneficiary of Defendant.

Defendant provides eligible employees up to twenty-six weeks of STD Benefits, which cover a percentage of an eligible employee's compensation when unable to perform their job duties.  (ECF No. 27-4 at 43, 44.)  To receive STD Benefits, a claimant must be "totally" or "partially" disabled, as defined by Defendant.  (*Id.* at 46.)  An employee is "totally disabled" if she "cannot perform the Essential Duties of [her] own occupation due to a Non-Occupational Illness or a Non-Occupational Injury" and is "earning less than 20% of [her] pre-disability Covered Compensation due to a Non-Occupational Injury or Non-Occupational Illness (including Mental Illness, . . .)" and "cannot perform the Essential Duties of [her] own occupation."  (*Id.*)  An employee is "partially disabled" if she is "able to work part-time for any employer performing some, but not all, of the Essential Duties of [her] own occupation" and "cannot earn more than 80% of [her] pre-disability Covered Compensation."  (*Id.* at 47.)  "Essential dut[ies] mean[] the important tasks, functions and operations generally required by employers from those engaged in their usual occupation that cannot be reasonably omitted or modified."  (*Id.* at 63.)  STD Benefits last until the earliest of:

> The date your employment terminates, The date you are no longer an eligible Employee of a Participating Company, The date the Charter Communications, Inc. Welfare Benefit Plan or the Short Term Disability Program is terminated or amended so that coverage is no longer available to you, The date your eligibility for Company disability benefits ends and you have not returned to work, The date you participate in a strike or lock-out, The last day you are in active employment except as provided under the leave of absence provision, The date you cease to be an eligible Employee, [or] The date of your death.

(*Id.* at 41.)

On March 20, 2017, Plaintiff did not report to work.  (*See, e.g.*, ECF No. 27-3 at 85, 86.)  On March 21, 2017, Plaintiff informed both CCI and Sedgwick that she was claiming disability based on "stress/anxiety/depression/behavioral health condition."  (*Id.* at 86.)  In correspondence dated March 22, 2017, Sedgwick advised Plaintiff that she needed to provide "medical documentation to support [he]r claim [of disability][] on or before 04/10/2017."  (*Id.* at 63.)  Also on March 22, 2017, Plaintiff was seen by Michael L. Nunnery, M.D., a family practice physician.  (ECF No. 27-2 at 36, 40.)  Dr. Nunnery noted that Plaintiff as to her psychiatric state was "oriented to person, place, and time flat mood and affect."  (*Id.*)  Dr. Nunnery assessed that Plaintiff had pharyngitis, depression with anxiety, and attention deficit disorder ("ADD").  (*Id.* at 40–41.)

In correspondence dated March 28, 2017, Sedgwick informed Plaintiff that her claim for STD Benefits would be denied if she did not provide "sufficient information [] in a timely manner."  (ECF No. 27-3 at 61.)  In correspondence dated April 3, 2017, Sedgwick informed Plaintiff that it had not received any medical information from her to help it determine whether "her leave qualifies for STD [B]enefits and Family Medical Leave."  (*Id.* at 60.)  On April 5, 2017, Plaintiff saw Dr. Nunnery again to complete STD forms and he observed that Plaintiff had active problems with ADD, depression with anxiety, restless leg syndrome, and Tenosynovitis.  (ECF No. 27-2 at 42.)  On a Concurrent Disability and Leave Statement of Incapacity/Attending Physician Statement form, Dr. Nunnery noted that Plaintiff was seeking leave for depression and anxiety, her incapacity began on March 20, 2017, and she could return to full work on May 1, 2017.  (*Id.* at 46.)  He checked a box on the form stating that Plaintiff's condition(s) did not cause her to be "unable to perform []her job functions due to their condition."  (*Id.*)

In correspondence dated April 11, 2017, Sedgwick conveyed to Plaintiff that (1) her medical information did "not support disability as defined by [he]r STD plan," (2) it was

considering any additional medical information provided by April 10, 2017, and (3) she was

approved for leave under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§

2601–2654, from March 20, 2017, through May 1, 2017.  (ECF No. 27-3 at 47.)  On April 14,

2017, Sedgwick approved Plaintiff for STD Benefits from March 27, 2017, to April 10, 2017, and

for FMLA leave from March 20, 2017, to May 1, 2017.  (ECF No. 27-2 at 68.)  The approval was

to provide "time for further evaluation, treatment, and stabilization of the condition."  (*Id.*)  In

correspondence dated April 14, 2017, Sedgwick told Plaintiff about the aforementioned approval

of STD Benefits, but stressed that she needed to provide updated medical information by April 21,

2017, to receive any additional STD Benefits.  (ECF No. 27-3 at 30.)  On April 19, 2017, Sedgwick

reminded Plaintiff that her medical information only supported STD Benefits until April 10, 2017.

On April 20, 2017, Plaintiff was seen by Kelly Herwig, a licensed clinical social worker,

who completed a Progress Note regarding the session.  (ECF No. 27-2 at 32, 34.)  Herwig noted

that Plaintiff was depressed, anxious, congruent with situation, tearful, and engaged.  (*Id.* at 32.)

Additionally, Herwig observed:

> [Plaintiff] disclosed information about an abortion that she had in January which
> has been a major source of stress she has been dealing with and without any support.
> [Plaintiff] endorsed symptoms of F43.0 Acute Stress Disorder to include
> experiencing a traumatic event, recurrent distressing memories of the event, intense
> psychological distress in response to cues, inability to experience positive
> emotions, an altered state of reality (being in a daze), efforts to avoid distressing
> memories and thoughts, efforts to avoid external reminders, sleep disturbance,
> irritability and anger, and problems with concentration.
>
> [Plaintiff] also meets criteria for F33.1 Major Depressive Disorder Moderate,
> Recurrent evidenced by depressed mood most of the day, diminished interest or
> pleasure in activities, sleep disturbance, fatigue, feelings of worthlessness and guilt,
> diminished ability to think or concentrate.
>
> These symptoms have impacted [Plaintiff] in the past and she reports history of
> being out of work for mental health in the past.  Symptoms were impacting
> [Plaintiff]'s work attendance, performance, and overall daily functioning.

(ECF No. 27-2 at 34.) Herwig forwarded the Progress Note to Sedgwick on April 21, 2017. (*Id.* at 29.)

In correspondence dated April 24, 2017, Sedgwick informed Plaintiff that the medical information received did not "support disability as defined by [he]r STD plan; therefore [he]r STD claim continues to be in an unpaid pending status." (ECF No. 27-3 at 17.) Moreover, Sedgwick stated that additional medical information needed to be provided by April 21, 2017. (*Id.*) On April 25, 2017, Sedgwick contacted Dr. Nunnery to request additional information regarding Plaintiff. (*Id.* at 121–22.) Dr. Nunnery was unavailable, but the registered nurse working in his office stated that Plaintiff was "emotionally stable," there was no follow up visit scheduled, and Dr. Nunnery would go by what is in the previously completed office visit notes. (*Id.* at 122.)

In correspondence dated April 26, 2017, Sedgwick informed Plaintiff that it was denying her claim for STD Benefits for the period of April 11, 2017, "through return to work" because "[m]edical does not support ongoing disability as medical information provides insufficient objective information that evidences cognitive impairment, functional impairment, and or emotional instability that would prevent her from performing her job duties effectively." (ECF No. 27-3 at 12, 13.) Sedgwick observed that its decision was "based on a review of medical documentation provided by Dr. Nunnery['s] office via phone on 04/25/17 and Kelly Herwig 04/21/17." (*Id.* at 13.)

On May 3, 2017, Plaintiff submitted a form by facsimile to appeal the decision denying her STD Benefits. (ECF No. 27-3 at 10.) She observed that the basis for the appeal would be a scheduled psychiatric evaluation on May 4, 2017, and any resultant medical documentation. (*Id.*) In correspondence dated May 5, 2017, Sedgwick conveyed to Plaintiff that it was reviewing her appeal request and would submit a written response by June 17, 2017. (*Id.* at 3.) Thereafter, on

May 19, 2017, Sedgwick received medical information from Dr. Melissa Kannaday from her May 4, 2017 session with Plaintiff.  (ECF No. 27-2 at 14, 17.)  Dr. Kannaday reported that Plaintiff was suffering from "major depressive disorder [that was] recurrent severe with psychotic features," generalized anxiety disorder, uncomplicated cannabis abuse, and uncomplicated alcohol abuse. (ECF No. 27-2 at 18.)

On May 22, 2017, Plaintiff communicated to Sedgwick that her file was complete.  (*Id.* at 50.)    Sedgwick referred Plaintiff's appeal to Dane Street, LLC, a company that provides independent medical examinations and peer review services covering workers' compensation and disability claims.  (*See* ECF No. 27-1 at 88–89); *see also Dane Street*, https://site.Danestreet.com/ what-we-do/ (last visited Oct. 25, 2020).

On June 1, 2017, Susan Orenstein, Ph. D., a licensed psychologist, provided the following independent medical review of Plaintiff by Dane Street to Sedgwick:

> This reviewer opines that there was insufficient clinical evidence to support functional impairment from 4/11/17 forward.
>
> The encounter notes in the file show very few dates of service with no recommendation for more frequent sessions or a more intensive approach.  Records did not include ongoing provider observations or specific exam findings of cognitive deficits or unusual or inappropriate behavior stemming from a mental health condition.  There was a lack of severity and intensity of symptomatology in mental status terms to illustrate the claimant's inability to function in any area, and no evidence of SI/HI, a thought disorder, impulse control difficulties, psychomotor retardation or other elements of severe psychiatric illness to support the functional impairment.  There was no verification of ongoing symptoms through measurable means like MMSE, MSE, PHQ9, Beck Inventories or Burns Inventories, psychological testing or other diagnostic tests for symptomatology.  The review does not provide significant examples of the claimant's symptoms impacting daily activities or requiring assistance from others.  There is no evidence of the claimant exhibiting poor hygiene or grooming, cognitive deficits, or decompensating during office visits.
>
> In peer to peer consultation, Ms. Herwig stated the first two sessions with the claimant were with the use of her EAP sessions, so she (the provider) could not comment on those sessions.  She said the first session with the claimant's insurance took place on 4/20/17, when a re-assessment was done.  The provider noted a subsequent session on 5/10/17 and the last session a no-show.  She described the

7

claimant as tearful and depressed with memory problems. When asked about the memory problems, the provider said the claimant self-reported this and also asked for appointment reminders. When asked if the claimant had problems with ADLs, she said no. When asked if restrictions and limitations were needed, the provider said she could not opine on that.

Therefore this reviewer opines that there was insufficient clinical evidence to support functional impairment from 4/11/17 forward.

(ECF No. 27-2 at 9.)

[F]unctional impairment was not supported in this file review.

(*Id.* at 10.)

On June 5, 2017, Patrick Young, M.D., a board-certified psychiatrist, provided the

following independent medical review on behalf of Dane Street to Sedgwick:

Overall, functional impairment is not supported from 4/11/17 through return to work.

The records indicated that on 3/22/17, the claimant saw Dr. Michael Nunnery to get a refill of Adderall. It is mentioned that she was seeing a therapist for depression and anxiety. On 4/5/17, she came to see Dr. Nunnery to get impairment forms filled out. The attending physician statement completed that day said that the claimant was to be excused from work from 3/20/17 – 5/1 /17 due to "depression and anxiety." She needed time off for counseling and to be started on medications. She was described as anxious. There were no impairments noted.

The claimant also saw Kelly Herwig in therapy. Sessions were on 4/21/17, 4/26/17, and 5/10/17. She was anxious and depressed. There were no mental status impairments described.

The claimant saw Dr. Kannaday initially on 5/4/17. She reported anxiety and guilt, particularly related to a previous abortion. She also reported poor energy, insomnia, anhedonia, and tearfulness. On exam, she was calm and cooperative. She was sad, tearful, and anxious. She could recall two of three words after five minutes. She had normal concentration. She was capable of abstract thinking. Diagnoses were major depressive disorder, generalized anxiety disorder, cannabis abuse and alcohol abuse. She was prescribed Prozac and Vistaril. She was instructed to stop taking the Adderall.

I spoke to Kelly Herwig for peer to peer consultation.

(ECF No. 27-1 at 95.)

[Herwig] said that [Plaintiff] was initially seen through EAP and [Herwig] is not authorized to discuss those appointments. She was seen on 4/21, 4/26, and 5/10/17. She has missed some appointments. Diagnoses were major depressive disorder and

acute stress disorder.  She had an abortion in January and felt guilty.  The claimant was tearful at times.  The claimant expressed problems with her memory and concentration but this was not tested.  She presented well.  She was verbal and cooperative.

Dr. Kannaday stated in peer to peer consultation that the claimant described issues with low energy and motivation.  She was dealing with stress and anxiety.  She was on Adderall, which was discontinued.  The Adderall was causing some issues with anxiety it was felt.  She did report having some concentration issues.  However, on cognitive testing, she was normal.  Dr. Kannaday felt that the main issue was anxiety and the report of panic, but all symptoms were by self-report.

Overall, functional impairment is not supported from 4/11/17 through return to work.  The claimant was described as being tearful at times; however, mental status findings were generally unremarkable and did not corroborate specific impairments, from a psychiatric standpoint, that would have prevented the claimant from being able to function.

(*Id.* at 96.)

There are no mental status impairments noted that would have prevented the claimant from functioning.

(*Id.* at 97.)

After receiving the independent medical reviews from Dane Street, Sedgwick informed Plaintiff in correspondence dated June 9, 2017, that it was denying her appeal "of the decision to deny benefits for the period of April 11, 2017 to your return to work" because "the medical information in the file does not support [her] inability to perform [her] own occupation."  (ECF No. 27-1 at 45, 46.)  To reach this decision, Sedgwick's National Appeals Unit stated that it "reviewed medical records from Francis Hane, M.D., Michael Nunnery, M.D., Melissa Kannaday, M.D. and Kelly Herwig, LISW-CP dated February 27, 2017 through May 4, 2017."  (*Id.* at 46.)  Additionally, Sedgwick also acknowledged referring Plaintiff's file to "two independent specialists: Susan Orenstein, Ph.D., a licensed psychologist, and Dr. Patrick Young, who is board certified in psychiatry," who did not support a finding of impairment.  (*Id.*)

Thereafter, Plaintiff filed the instant action in this court on October 20, 2017, seeking the aforementioned declaration regarding her eligibility for STD Benefits.  (*See* ECF No. 1 at 3.)

Defendant answered the Complaint on December 11, 2017, denying its allegations.  (ECF No. 10.)

On July 6, 2018, the parties filed cross-Memoranda in Support of Judgment and a Joint Stipulation.

(ECF Nos. 24, 25, 26.)   Defendant filed a Response in Opposition to Plaintiff's Motion for

Judgment on July 13, 2018. (ECF No. 28.)

All filings by the parties rely on the Administrative Record filed on July 6, 2018.  (ECF

No. 27.)

## II.    LEGAL STANDARD AND ANALYSIS

A.    Standard of Review for STD Benefits Claims

The parties agree that Sedgwick's denial of Plaintiff's STD Benefits claim should be

reviewed for abuse of discretion because the Plan "confers discretionary authority onto claims

administrators to determine benefits pursuant to the terms of the Plan."  (ECF No. 26 at 1); *see*

*Woods v. Prudential Ins. Co.*, 528 F.3d 320, 322 ("[If]the benefit plan gives the administrator or

fiduciary *discretionary* authority to determine eligibility for benefits or to construe the terms of

the plan . . . , the courts' review is for abuse of discretion." (citing *Firestone Tire & Rubber Co. v.*

*Bruch*, 489 U.S. 101, 115 (1989))).  Where a plan administrator's decision is reasonable, the court

should not disturb the benefits decision in substitution of its own judgment. *See Sheppard & Enoch*

*Pratt Hosp., Inc. v. Travelers Ins. Co.,* 32 F.3d 120, 125 (4th Cir. 1994).  "Under the abuse of

discretion standard, the plan administrator's decision is reasonable if it is the result of a deliberate,

principled reasoning process and if it is supported by substantial evidence."  *Bernstein v.*

*CapitalCare, Inc.,* 70 F.3d 783, 788 (4th Cir. 1995) (internal quotation marks and citation omitted).

Substantial evidence is "more than a mere scintilla" and is "[s]pecifically, . . . such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidation*

*Coal Co. v. Williams,* 453 F.3d 609, 614–15 (4th Cir. 2006) (citations omitted).

To determine the reasonableness of an administrator's discretionary decision, the Fourth

Circuit has held that a court may consider a non-exhaustive list of factors:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy
> of the materials considered to make the decision and the degree to which they
> support it; (4) whether the fiduciary's interpretation was consistent with other
> provisions in the plan and with earlier interpretations of the plan; (5) whether the
> decisionmaking process was reasoned and principled; (6) whether the decision was
> consistent with the procedural and substantive requirements of ERISA; (7) any
> external standard relevant to the exercise of discretion; and (8) the fiduciary's
> motives and any conflict of interest it may have.

*Booth v. Wal–Mart Stores, Inc. Assocs. Health & Welfare Plan,* 201 F.3d 335, 342–43 (4th Cir.

2000). "All eight *Booth* factors need not be," and might not be, "in play" in a given case.[3]  *Helton*

*v. AT & T, Inc.,* 709 F.3d 343, 357 (4th Cir. 2013).

B.    The Parties' Arguments

Plaintiff first argues that because she suffered from depression, "Defendant abused its

discretion by giving greater weight to the lack of objective testing than Plaintiff's subjective

symptoms."  (ECF No. 24 at 7 (citing *Zhou v. Metro. Life Ins. Co.*, 807 F. Supp. 2d 458, 471 (D.

Md. 2011) ("A claim of disability due to depression is fundamentally different from other types of

disability claims that can be proved solely through a clinical medical record.")).)  In this regard,

---

[3] In an unpublished opinion, the Fourth Circuit explained that it has expressed the reasonableness
inquiry in different terminology:

> A reasonable decision is the result of a deliberate, principled reasoning process
> and is supported by substantial evidence. . . . This court has alternatively
> framed reasonableness as an open-ended inquiry that may, in addition to other
> relevant issues, consider [*Booth*'s] eight factors. . . . We have never explicitly
> overruled *Booth*'s facially more expansive test of reasonableness. Recent
> decisions have embraced both standards. We reconcile the two lines of cases
> by viewing the *Booth* factors as more particularized statements of the elements
> that constitute a deliberate, principled reasoning process and substantial
> evidence . . . .

*Donnell v. Metro. Life Ins. Co.,* 165 F. App'x 288, 294 & n.6 (4th Cir. 2006). (internal citations
omitted).

Plaintiff argues that the *Zhou* decision recognizes that a defendant can err by focusing "on [the] lack of objective medical evidence for conditions that rely heavily on subjective/self-reported symptoms in diagnosis and treatment." (*Id.* at 9.) Plaintiff next argues that "Defendant abused its discretion by failing to request that Plaintiff attend an Independent Medical Evaluation." (*Id.* (citing *Zhou*, 807 F. Supp. 2d at 474 ("Where a claimant suffers from a disability condition encompassing subjective complaints, an independent medical examination is appropriate.")).) Plaintiff asserts that the failure to request an independent medical exam demonstrates that Defendant did not "engage[] in a 'full and fair' review as required by ERISA." (ECF No. 24 at 10.) Finally, Plaintiff argues that "Defendant abused its discretion by failing to adequately consider the relevant duties of Plaintiff's job that relate to her disabling conditions." (*Id.* at 11.) To this point, Plaintiff states that the opinions Defendant relies on "are flawed as none of them appear to have reviewed the essential job duties performed by Plaintiff which directly relate to her disability." (*Id.* at 12.)

Defendant argues that it is entitled to judgment because Sedgwick's "decision to deny STD [B]enefits was, at every step, the product of a deliberate, principled reasoning process, and was supported by substantial evidence in the administrative record." (ECF No. 25 at 16.) More specifically, Defendant asserts that Sedgwick's "decision to deny benefits, based on a comprehensive review of [Plaintiff]'s medical file and the opinions of two independent medical professionals, was, at minimum, not an abuse of discretion." (*Id.* at 19.) Moreover, Defendant contends that "in the Fourth Circuit, an administrator does not abuse its discretion when it bases its decision to deny benefits on the opinions of independent physicians who disagree with those of the beneficiary's physicians." (*Id.* at 20 (citing *Harley v. Int'l Paper Co. Long Term Disability Plan*, 586 F. Supp. 2d 428, 441–42 (D.S.C. 2007) (no abuse of discretion where plan administrator

"relied on the opinions of physicians who disagreed" with plaintiff's treating physicians and "conflicting medical reports exist[ed]"); *Matos v. Lorillard Tobacco Co. Grp. Disability Ins. Plan*, 391 F. Supp. 2d 392, 401 (M.D.N.C.) ("Given the conflicting recommendations between Ms. Matos' treating physician and those physicians who conducted the independent medical review of Ms. Matos' medical records, Continental Casualty's denial of benefits was not an abuse of discretion"); *Hairston v. Liberty Life Assur. Co. of Bos.*, No. 13-CV-656, 2015 WL 3675031, at *8 (M.D.N.C. June 12, 2015) (no abuse of discretion where "[the treating doctor's] opinion was not supported by diagnostic tests or other objective evidence" because "ERISA do[es] not command plan administrators to credit the opinions of treating physicians over other evidence relevant to the claimant's medical condition")).)

C.    The Court's Review

The issue before the court is whether Sedgwick's decision to deny Plaintiff STD Benefits was reasonable under an abuse of discretion standard.  In conducting this assessment, the court observes that the parties' arguments appear to only create an issue as to the third *Booth* factor, which concerns the adequacy and degree of the materials considered to make the decision.  The court further observes that any "assessment of the reasonableness of [Sedgwick]'s decision must be based on the facts known to it at the time." *Sheppard & Enoch Pratt Host., Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994) (citing *Berry v. Ciba–Geigy*, 761 F.2d 1003 (4th Cir. 1985)).

Upon review of the record, the court finds that substantial evidence supports Sedgwick's decision.  Dr. Nunnery, Plaintiff's physician, stated that her conditions did not cause her to be unable to perform the functions of her job.  (*See* ECF No. 27-2 at 46.)  Plaintiff's therapist (Herwig) and psychiatrist (Kannaday) offered diagnoses, but failed to specify how these conditions affected

Plaintiff's employment status. (*See* ECF No. 27-2 at 18, 32.) However, in contrast to Herwig and Kannaday, Dr. Orenstein and Dr. Young performed independent medical reviews and expressly concluded that Plaintiff's conditions did not support a finding of functional impairment after April 11, 2017. (*See* ECF Nos. 27-1 at 90–98, 27-2 at 4–11.) Therefore, after examining the totality of the medical record that was before Sedgwick at both the time of its initial decision and the decision on appeal, the court finds that Sedgwick's decision to deny Plaintiff STD Benefits did not constitute an abuse of discretion. *E.g.*, *Collins v. Qwest Disability Plan*, No. CA7:06-1128-HMH, 2006 WL 2946466, at *5 (D.S.C. Oct. 16, 2006) ("There is no objective medical evidence that [Plaintiff] Collins' anxiety and depression prevented her from working. [Plaintiff] Collins has failed to provide sufficient objective medical evidence that she is totally disabled.").

### III.    CONCLUSION

For the foregoing reasons, the court finds that Sedgwick did not abuse its discretion in denying Plaintiff's claim for STD Benefits. The court also finds that Plaintiff has not shown some degree of success on the merits and, therefore, is not entitled to an award of attorney's fees.[4] Accordingly, the court **DIRECTS** entry of judgment in favor of Defendant Charter Communications Short Term Disability Plan.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

November 2, 2020
Columbia, South Carolina

---

[4] Under § 1132(g), the court in its discretion may grant reasonable attorney's fees and costs of an ERISA action. 29 U.S.C. § 1132(g). In *Hardt v. Reliance Standard Life Ins. Co.*, the Supreme Court held that an ERISA claimant "need not be a 'prevailing party' to be eligible for an attorney's fees award." 560 U.S. 242, 254 (2010). Instead, a court may award a non-prevailing ERISA claimant attorney's fees if it shows "some degree of success on the merits." *Id.* at 255 (quotation marks omitted).